# In the United States Court of Federal Claims

Nos. 14-651C

(Filed: October 3, 2014)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RLB CONTRACTING, INC.,

          *Plaintiff*,

v.

THE UNITED STATES,

          *Defendant*.

Pre-Award Bid Protest; NAICS code 237990; Small business size standard; Small Business Administration Office of Hearings and Appeals; Injunctive relief

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Michael H. Payne*, Philadelphia, PA, for plaintiff, with whom was *Robert G. Ruggieri*, of counsel.

*Sarah M. Valenti*, Civil Division, Commercial Litigation Branch, Department of Justice, Washington, DC, with whom were *Stuart F. Delery*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, and *Deborah A. Bynum*, Assistant Director, for defendant. *Antonio T. Robinson*, U.S. Department of Agriculture, of counsel.

OPINION

This is a bid protest of the United States Department of Agriculture's ("USDA" or "agency") selection of a $33.5 million dollar size standard for this small business set-aside procurement and the subsequent affirmance of that decision by the Small Business Administration ("SBA") Office of Hearings and Appeals ("OHA"). The parties submitted cross-motions for judgment on the administrative record, and oral argument was held on September 23, 2014. We announced at the conclusion of oral argument that we would sustain plaintiff's protest, and we entered an injunction that same day. We explain our reasoning more fully below.

1

BACKGROUND

On June 23, 2014, USDA's Natural Resource Conservation Service ("NRCS") issued AG-7217-S-14-0007 for the South Lake Lery Shoreline and Marsh Restoration Project in Plaquemines Parish, Louisiana. Administrative Record 1 ("AR").[1] The contract is to be a firm fixed price, and the agency estimates the project to be worth more than $10 million. The contract has not yet been awarded.

The purpose of the project is to restore much of the shoreline of Lake Lery, which has receded after major hurricanes hit the area in the last decade, and to create a healthy and stable marsh on the border of the lake. The solicitation calls for the creation of 513.9 acres of interior marsh, divided into five cells on the marsh side of the Lake Lery shoreline, along with 35,831 feet of shoreline restoration on the southern and western rim of the lake. AR 347. The solicitation contains 12 items of work to be performed and separately priced in the offerors' proposals.

| Item No. | Work |
| --- | --- |
| 1 | Mobilization and Demobilization |
| 2 | Contractor Quality Control |
| 3 | Construction Surveys |
| 4 | Excavation, Access |
| 5 | Earthfill, Lake Rim Embankment |
| 6 | Earthfill, Containment Dikes |
| 7 | Excavation, Marsh Creation Dredging |
| 8 | Excavation, Degrade Containment Dikes |
| 9 | Geotextile |
| 10 | Staff Gauges |

---

[1] The agency had earlier solicited the same services, but that procurement was cancelled and the agency rebid the contract voluntarily after a protest on unrelated grounds at the Government Accountability Office ("GAO").

| 11 | Field Office |
|---|---|
| 12 | Structure Removal (Additive Item) |

AR. 5.   The items are to be priced as follows:

| Item No. | Quantity | Unit |
|---|---|---|
| 1 | 1 | Lump Sum |
| 2 | 1 | Lump Sum |
| 3 | 1 | Lump Sum |
| 4 | 1 | Lump Sum |
| 5 | 35,831 | LF [Linear Feet] |
| 6 | 48,154 | LF [Linear Feet] |
| 7 | 3,983,600 | CY [Cubic Yards] |
| 8 | 23,571 | LF [Linear Feet] |
| 9 | 27,6444 | SY [Square Yards] |
| 10 | 48 | Each |
| 11 | 1 | Lump Sum |
| 12 | 8 | Each |

*Id*.

With respect to past performance, the solicitation asks for information regarding six areas of experience:

> 1.  Experience with hydraulic dredging activities for marsh creation including management of marsh creation fill areas in a costal environment.
> 2.  Experience with construction of earthen embankments and containment dikes in a coastal environment.
> 3.  Experience with excavation activities for flotation access in a costal environment.
> 4.  Experience with the local area and the unique conditions

including tides, weather and soils in costal Louisiana or similar coastal marine environments.
5. The ability to develop and administer quality control activities.
6. The ability to develop, administer and monitor safety activities.

AR 49. Similar information is sought for subcontractors as well.

Offerors are also required to include a "narrative with a detailed approach to execute the construction portion" of the work. AR 52. The narrative is required to address, among other things, the following items:

1. Means and methods to complete excavation for flotation access channels.
2. Means and methods for installation of geotextile.
3. Management activities for construction operations and NRCS field office location . . . .
4. Means and method to perform all surveying activities.
5. Means and methods for construction of earthen embankment/lake rim and containment dikes.
6. Means and methods to complete hydraulic dredging activities for marsh creation including management of marsh creation fill areas within the designated containment areas.
7. Means and methods of installation, protection, and maintenance of staff gauges.
8. Plans for the protection of existing vegetation, structures and other utilities.

AR. 53. In addition, the Technical Approach information must include a detailed schedule with a progress curve which identifies milestones and activities.

The solicitation does not contain much specificity as to what types of equipment or methods are to be used. Questions submitted by offerors and the answers by the agency, incorporated by amendment into the solicitation, make clear that the agency leaves it up to the offerors to "use any means or methods they choose as long as it complies with the plans and specifications." AR 283 (Answer to question regarding whether the lake rim crest could be formed with a bucket); *see also* AR 309 (question and answer regarding use of hydraulic dredging for the access channel), 310 (question and answer regarding using

land-based equipment on the lake rim embankment). The work specifications, however, do contain certain requirements regarding how the work is to be performed, such as a limitation on placing land-based equipment on or near the lake rim embankments and dikes. *E.g.*, AR 164-65.

The contracting officer ("CO") set the contract aside for small businesses, choosing North American Industry Classification System ("NAICS") code 237990, Other Heavy and Civil Engineering Construction, as the applicable industry category. The SBA-set small business size standard for NAICS code 237990 was, at the time, $33.5 million. 13 C.F.R. § 121.201 (2013). That code also requires consideration of a possible exception, however, for contracts which are comprised primarily of dredging and surface clean up. For those contracts, a size standard of $25.5 million in annual receipts applied. *Id.*[2] Also included in the dredging exception is a requirement that the small business "perform at least 40 percent of the volume dredged with its own equipment or equipment owned by another small dredging concern." *Id.* n.2. The CO concluded that the exception did not apply.

Plaintiff first challenged the decision not to apply the dredging exception through a NAICS code appeal to the SBA, filed on July 2, 2014. Another prospective offeror, Inland Dredging Co., LLC ("Inland") filed a similar appeal, and the two were consolidated at OHA. RLB and Inland argued that between 85-95 percent of the man-hours of work required would be devoted to dredging activity, which would require, according to them, either a mechanical or hydraulic dredge. They thus argued that the contract should have been classified under the dredging exception because dredging was the primary purpose of the work.

The agency responded that the solicitation required not just dredging but also construction of embankments and dikes as well as other work not classified as dredging. In the agency's view, the primary purpose of the project was general construction. USDA presented OHA with examples of what it would consider to be a typical dredging contract, which would contain only 1 or 2 work items (mobilization and demobilization) other than dredging. AR 446 (OHA decision reciting the parties' arguments). The agency also

---

[2] We cite here to the 2013 version of the Code of Federal Regulations for the size standard because they were recently updated for NAICS code 237990. For 2014 and following, they are now $36.5 million with a $27.5 million cap for dredging projects.

pointed to the fact that the solicitation does not require offerors to excavate in any particular manner, and thus the additional work items which the appellants claimed to require dredging should not be considered controlling because other methods might be used. The agency cited specifically the potential use of "marsh buggy excavators" instead of floating dredge barges as an alternative. AR 446-47. USDA rejected the appellants' contention that more than 80 percent of the work would be dredging, arguing instead that only 9.6 percent of the man hours would be required for dredging, which would represent 39.4 percent of the total labor cost. AR 376-77 (Agency response to SBA appeal), AR 360 (Agency statement in support of response to SBA appeal). In support of those figures, the agency attached a spreadsheet of labor cost and labor hours broken out by work item, based on a 12 hour workday.[3] *See* AR 354-55 (12 hour spreadsheet); AR 360 ("See attached spreadsheet analysis").

RLB asked the OHA administrative law judge to allow it to file a reply in order to correct a mistake of fact, which it asserted was imbedded in the agency's response. RLB asserted that the spreadsheet submitted by the agency was inaccurate because it was based on a 12 hour day with only one dredge barge operator. RLB attached an updated, NRCS-created spreadsheet reflecting a 24 hour day and 7 persons operating the dredge, which showed dramatically different percentages of cost and man-hours. *See* AR 447. That request was denied because OHA had not asked for a reply.

OHA denied the appeal by written decision on July 18, 2014. The OHA judge started with the description of code 237990 in the NAICS Manual and found that the CO had committed no clear error in deciding that the "'principal purpose of the product or service being acquired'" was best reflected in the general description of 237990 and not the more specific dredging and surface clean up exception. AR 449 (quoting 13 C.F.R. § 121.402(b)). Although acknowledging that the "'procurement is usually classified according to the

---

[3] That sheet also assumed 1 barge operator for the dredging barge and hydraulic dredge, an assumption the agency has since disavowed. It is not clear from what source the agency drew the 39.4 percent figure for labor costs. In the attached 12 hour analysis, the labor costs associated with dredging are only 10.6 percent. *See* AR 357,; AR 407 (Attachment 4 to the Agency's response to RLB's appeal at SBA). A later conducted 24 hour analysis shows 37.2 percent of labor costs attributable to dredging, 38.6 percent of total hours, and 42.6 percent of labor days. *See* AR 356. That spreadsheet was not attached to the agency's submissions to the SBA, however.

6

component which accounts for the greatest percentage of contract value'," the OHA judge declined to do a quantitative comparison as invited by plaintiff. Instead he relied on the narrative elements of the solicitation, including the title of the project, and the general description of the work items.  Seeing work elements such as "excavation" and "construction of earthen embankments," he concluded that, although "dredging activities account for a large portion of the services sought," the project also "requires a substantial amount of other types of work."  AR 450.  The result of this analysis was that "the Dredging exception is not appropriate where a procurement requires so many other services in addition to the dredging."  *Id.*  The opinion makes no effort to quantitatively contrast "a large portion" with "a substantial amount."

Electing to forego bidding on the project under the larger size standard, plaintiff filed a pre-award protest in this court on July 24, 2014, challenging the OHA decision and the CO's original decision not to apply the dredging exception to NAICS code 237990 as arbitrary, capricious, and otherwise not in accordance with the law.  Defendant agreed to stay award of the contract pending resolution of the protest, and we thus denied plaintiff's motion for a preliminary injunction as moot.  The parties filed cross-motions for judgment on the administrative record, and we heard oral argument on September 23, 2014.  As we announced at the conclusion of oral argument, we agree with plaintiff that both the agency and OHA acted irrationally and otherwise contrary to law in their consideration of whether to apply the dredging exception.  We issued an injunction later that day, enjoining award of the contract and directing the agency to reconsider whether to apply the dredging exception in accordance with our guidance provided in the order.  *RLB Contracting, Inc. v. United States*, No. 14-651C (Fed. Cl. Sept. 23, 2014) (order and permanent injunction).  The reasoning behind that order is contained herein.

## DISCUSSION

I. Legal And Regulatory Framework

We have jurisdiction to review the actions of agencies taken "in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1) (2012).  We review such actions pursuant to the administrative review standards of the Administrative Procedures Act ("APA").  *Id.* § 1491(b)(4) ("the court[] shall review the agency's decision pursuant to the standards set forth in section 706 of title 5" (the APA)).  We may only set aside agency action when it is found to be "arbitrary, an abuse of discretion,

capricious, or otherwise not in accordance with the law." 5 U.S.C. 706(2)(A) (2012). Decisions of SBA's OHA are reviewable under this grant of authority, subject to the same standard. *InGenesis, Inc. v. United States*, 104 Fed. Cl. 43, 48 (2013) (citing *Ceres Envtl. Servs., Inc. v. United States*, 52 Fed.Cl. 23, 33 (2002)). We afford the SBA deference in its NAICS code determinations, and likewise the decisions of OHA, as it is the repository of Congress' delegated authority to give preference to small businesses in federal contracting. *See Ceres Envtl. Servs.*, 52 Fed. Cl. at 35-36. We will set an OHA decision aside only if it lacks a rational basis or violates an applicable statute or regulation. *Id.* at 35.

The SBA's regulations instruct that, in making a size standard determination, the contracting officer must select "the single NAICS code which best describes the principal purpose of the product or service being acquired." 13 C.F.R. § 121.402(b) (2014). "Primary consideration is given to the industry descriptions in the [NAICS Manual], the product or service description in the solicitation . . . , the relative value and importance of the components of the procurement making up the end item procured, and the function of the goods or services being purchased." *Id.* § (b)(1). The regulation goes on to further clarify that "a procurement is usually classified according to the component which accounts for the greatest percentage of contract value." *Id.* § (b)(2). The Federal Acquisition Regulation ("FAR") parrots these requirements, reaffirming that classification is normally a product of the "component which accounts for the greatest percentage of contract value." 48 C.F.R. § 19.303(a)(2) (2014).

II. The Parties' Arguments

Plaintiff argues that the agency and OHA erred in failing to give meaningful consideration to which items of work will require dredging and whether that work makes up "the greatest percentage of contract value." 13 C.F.R. § 121.402(b). Plaintiff contends that work item 7, Dredging, Marsh Creation, which is indisputably dredging work, is sufficient by itself to constitute the majority of the work. In addition, it contends that items 5 and 6, the earthfill items, require use of marine-based dredging due to the solicitation's particular prohibition against using equipment atop the 25-foot berm or within 15 feet of the bottom of the lake rim embankment and

containment dikes.[4] Because the site is adjacent to a lake and in a marshy area, plaintiff argues that it impossible to do the work by any other means than marine-based dredging.[5] Plaintiff also points to the requirements for the Past Performance and Technical Approach factors and argues that these are consistent with dredging work. Thus, according to plaintiff, the solicitation is asking for a description of how an offeror would perform dredging work for these items.

Plaintiff next turns to the relative value of the items it considers to be dredging. Plaintiff estimates that item 7 alone represents 65 percent of the contract's total value. Plaintiff adds item 4, "Excavation, Access," because the solicitation anticipates that it will be done via mechanical dredge. *See* AR 205 ("Excavation of the shoreline borrow/access channel shall be done using a barge-mounted bucket dredge."). Plaintiff also adds items 5 and 6, the earthfill for the lake rim embankment and containment dikes, because they represent primarily dredging work as well in that they assume the placement of dredged materials. Item 8, Excavation, Degrade Containment Dikes, is added to plaintiff's calculus because it, like item 4, requires excavation by mechanical dredge. These add items add up to 85 percent of the cost of the work, according to plaintiff. RLB also posits that mobilization and demobilization ought to be included because the great majority of that item relates to bringing the dredging equipment to the site and later removing it. This would bring the total to 90 percent of the contract's value.

Plaintiff then turns its attention to a 24 hour-a-day labor analysis conducted by the agency but not presented to the OHA judge, AR 356-57. Plaintiff points out that Item 7 alone accounts for 38.6 percent of the man-hours on the project. Adding in items 5 and 6 brings the result to 76.25 percent of the work. The number approaches 100 percent if all of plaintiff's allegations are credited. Plaintiff asked permission to include it in a reply brief

---

[4]Those requirements are found at AR 164 and 165 in the specifications for the work items.

[5]Plaintiff spent a good deal of time in its briefing and at oral argument explaining what constitutes mechanical and hydraulic dredging and why this work must be done by those methods. In support, it cites the United States Corps of Army Engineers' definition of a "dredge" and "dredging." This is added to counter defendant's argument that use of certain mechanical excavation equipment should not be considered dredging.

9

to OHA, but that request was denied, which makes the OHA decision all the more arbitrary in plaintiff's view. In the face of these facts, plaintiff argues that it was irrational for the CO and the SBA to have considered this work anything other than a dredging project.

Plaintiff also references an internal government cost estimate, which shows that items 4 and 7 alone make up 58 percent of the estimated cost, and that including items 5 and 6 bring the dredging percentage of costs to 81 percent. This is supported by the cost totals of the contract first awarded and then rescinded after the GAO protest on other grounds. That award showed 75 percent of the total cost attributable to item 7 by itself. Neither of these items are present in the administrative record, however, and defendant objected to them as neither present before the CO when she made her initial NAICS code determination nor before the SBA on appeal.

Defendant answers these arguments by pointing out that the solicitation characterizes the project as shoreline restoration and marsh creation, which, according to defendant, demonstrates that more is involved than simple dredging. Defendant argues that a literal reading of the elements of the solicitation makes the CO's and the SBA's decisions reasonable on their face. The sum of defendant's argument is that this project is general construction because it requires the construction of berms and dikes, the emplacement of geotextile materials to stabilize the marshes, construction surveys, staff gauges, and a field office. Defendant rejects plaintiff's characterization of items 5 and 6 because the solicitation does not specifically require dredging for those items. It points to the questions and answers appended to the solicitation and incorporated by amendment therein, in which the agency thrice states that the contractor may choose the methods to accomplish the work. *See* AR 283, 309, 310.

Defendant further points the court to the CO's Statement of Relevant Facts to the OHA judge. In that document, the CO stated that she did market research and reviewed historical data from prior NRCS marsh projects with similar features. In doing so, she consulted the Office of Coastal Protection and Restoration, the SBA, and the Army Corps of Engineers. She also searched the government's System of Award Management, AR 347, and consulted the State Construction Engineer, who determined that the project best fit the general construction description due to the "complexity of completing the construction activities for constructing the containment dikes and lake rim embankment with the types of soils that would be utilized and the requirement to maintain these features during the entire contract duration."

AR 347-48. The CO also noted that the project would have two wage rates, one for dredging and one for general construction, and that dredging crews would only be active less than 40 percent of the time "compared to a typical construction crew being onsite for 60 percent of the time for the construction of the earthen containment dikes and lake rim embankment." AR 348.

Defendant defends the OHA decision as reasonable because OHA considered the solicitation as a whole and found the work to be more akin to general construction than dredging. The fact that the OHA judge did not have the updated labor hour analysis was immaterial, according to defendant, because the decision was supported by the solicitation itself. Defendant, in fact, disclaimed the 12 hour analysis in its briefing and at oral argument, but argues that it should not matter given that the reading of the solicitation undertaken by the CO and the OHA judge was reasonable.[6] In other words, a quantitative analysis was unnecessary.

III. Neither USDA's Nor SBA's Decisions Were Reasonable

The size standard decisions by both agencies were flawed because the record does not show that they gave proper consideration to whether dredging constitutes the primary activity involved, which the regulations instruct is best determined by the relative value of the items of work involved.

A. The Contracting Officer's Determination Was Irrational

The CO's statement of facts to the SBA is the best indicator of what was in front of the agency when it made its initial size standard determination. That statement makes clear that the agency relied primarily on the overall purpose the project, "marsh creation and preservation," in its classification of this project as best fitting under the general description of construction services found in NAICS code 237990. We note at the outset that marsh creation and preservation is the ultimate end of the project, but that phrase leaves ambiguous the presumptive means to achieve that end, which we view as the more relevant concern for this exercise in taxonomy. I.e., the work performed rather than the final outcome should be the focus of the inquiry because the contractor is concerned with what its capabilities are.

---

[6]We can understand why defendant disclaimed that analysis. The specifications for item 7 in the solicitation specifically state that the hydraulic dredge would operate 24 hours a day, seven days a week. AR 166.

11

The CO contrasted the work required by the solicitation to what she considered to be more typical dredging projects. Dredging contracts, in her words, involve "pump and dump," but the solicitation requires the contractor to manage the discharge from the dredge in such a way as to "achieve a 'uniform' elevation as established by the plans and specifications" within the marsh creation cells. AR 349. That, in conjunction with the other elements not found in more routine clean up dredging operations led to the conclusion that this project was something more than dredging, and thus it would be better to classify it as a general construction project. The only quantitative consideration was with regard to labor hours. The CO stated that item 7 would make up less than 40 percent of man-hours while general construction would take up the rest. That calculation assumes that the only dredging involved is embraced by item 7.

We are not in a position to second guess the agency's determination that dredging was not strictly required for work components other than item 7. Plaintiff may be correct that nearly all the work actually will have to be done with dredging machinery, but the record does not give us access to that determination. We assume, therefore, that the agency was reasonable in concluding that the only work item which had to be presumed to constitute dredging was item 7.[7] The fact that there were eleven other work items, however, says nothing about the relative importance of those items.

The regulations require an analysis of the relative weight of the components of the contract, and absent compelling reasons, the contract should be classified according to "the component which accounts for the greatest percentage of contract value." 13 C.F.R. § 121.402(b)(2); *see Red River Serv. Corp. v. United States*, 60 Fed. Cl. 532, 548-49 (2004) (holding that a protestor was entitled judgment on the administrative record because the CO failed to give "primary consideration to the relative value and importance of the components of the procurement.")
 The closest the CO came to this analysis was a look at the anticipated labor hours per work item. She attributed 40 percent to dredging from item 7, and, because this was less than the 60 percent of labor items attributed to the other work items, she was satisfied that dredging was not the primary purpose. That conclusion, taken at face value, is insufficient, however.

---

[7] Item 7 is not in dispute between the parties. Both agree that it is dredging work.

The percentage of labor hours involved in a component of work is not necessarily synonymous with its contribution to overall cost. Item 7 is priced by the cubic yard of material dredged, not the man hours expended, if for no other reason, we assume, because it involves the use of heavy equipment.[8] Items 5, 6, and 8, as further example, will be paid by linear foot of the material placed. But nowhere in the record is there any analysis of the total price of item 7 in comparison to the other work items. The agency's failure to quantify in any meaningful way its ultimate conclusion violates the requirement of the regulation. The regulations are clear, primary consideration is to be given to the relative value of the components, i.e., what the agency will pay for each item of work. No such calculation was made.

Plaintiff presented us with two documents at oral argument generated by the agency but not included in the administrative record. One is a letter sent to RLB after the award of the contract to another awardee prior to the GAO protest. That letter presents the cost break down of the successful awardee's proposal. In it, item 7 constitutes nearly 75 percent of the total price. The second document is a spreadsheet, given to plaintiff at its debriefing following that initial award, which reflects the government's internal cost estimate compared with those of RLB and the awardee. The agency estimates $13,942,600 for Marsh Creation Dredging, item 7, out of a total estimated price of $24,280,506. Item 7 thus represented 57 percent of the government's anticipated cost.

The record is not entirely clear when the government's internal cost estimate was generated and whether the CO had it in front of her at the time of her initial determination. It is important to remember, however, that the initial contract award was cancelled after a protest at GAO. The agency issued a new solicitation after correcting defects presented at GAO. Thus, at the time of the re-solicitation, the agency knew it anticipated 57 percent of cost would be attributable to item 7, and it knew that a prior awardee for the same work had priced the dredging component at nearly 75 percent of the total cost.

---

[8]The contract is to be a firm fixed price with a very simple pricing structure. There are no line items for the cost of running the heavy machinery necessary for dredging, the cost of paying skilled labor to operate it, or for the wear and tear associated with its operation. Instead, the major work components are priced by the quantity of material moved. We presume that is how one line item could so predominate–the total costs in price per cubic yard of dredged material.

These materials were thus part of the contract record in front of the agency and should have been included in the administrative record. We deem them included.

In light of this knowledge, it was irrational and not consistent with the regulations for the CO to have not reconsidered the applicable size standard and to not have done a more meaningful quantitative analysis. Although we cannot make this determination for the agency, as we instructed in our order of September 23, 2014, if item 7 is the most valuable item, primary consideration must be given to it in determining if the exception applies. *See Red River Serv. Corp.*, 60 Fed. Cl. at 548-49.

    B. The SBA Decision on Appeal Failed to Consider the Relative Value of the Components of Work

Like the USDA before it, OHA's decision on appeal is devoid of any quantitative analysis of the relevant cost or importance of the work items. Rather than confront the appellants' arguments squarely regarding the value of the dredging work, the OHA judge rested his conclusion on his reading of the various tasks required and the overall purpose of the project. He did not consider whether the CO properly determined the relative value of the components nor did he even consider the admittedly incorrect labor hour break down presented to him by the agency. Instead, he simply concluded, "Thus, I hold that in order for this exception to apply, the services procured have to be Dredging or Surface Cleanup Activities in nature. Merely because a solicitation involves dredging work does not justify the use of the exception." AR 449. The first sentence is confusing because it leaves no room for a comparative analysis. The second sentence is correct but begs the question, "how much of the work is dredging?".

For aught that appears, OHA seems to have treated as controlling the fact that there are a number of work items, and arguably only one of them was dredging. The judge recognized that dredging "activities account for a large portion of the services sought" but found that unconvincing because "the Project requires a substantial amount of other types of work in addition to dredging." AR 450. That simplistic and imprecise reasoning is too flabby to meet the regulatory requirements. No consideration of the relative value of the work items or which was the most representative component was undertaken. We must therefore set the SBA OHA decision aside as irrational and contrary to the applicable law.

IV. Plaintiff Is Entitled to Injunctive Relief

The plaintiff has shown that the agency and the SBA acted irrationally and not in accordance with the applicable regulations. It remains to be seen whether plaintiff is entitled to the extraordinary relief of an injunction. To be entitled to an injunction, in addition to demonstrating success on the merits, plaintiff must show that it will suffer irreparable harm absent an inunction, that the balance of the hardships favors an injunction, and that it is in the public interest to grant relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004). As discussed above, plaintiff has shown that USDA and SBA acted irrationally and not in accordance with the law. We thus turn to the other three factors.

A. Plaintiff Will Suffer Irreparable Harm

Plaintiff alleges that the total value of the contract is likely to exceed $15 million and that it will be deprived of the opportunity to compete absent an injunction. Plaintiff also argues that it and other offerors are harmed by having to compete against larger firms that do not have to meet the dredging exception's 40 percent requirement, a requirement that RLB alleges it meets.[9]

Defendant responds by arguing that mere economic harm, or the loss of opportunity to compete, is insufficient to establish irreparable harm. Defendant cites to several prior decisions of this court wherein suggesting that economic harm of the sort alleged by plaintiff is insufficient. *See Sierra Military Health Serv. United States*, 58 Fed. Cl. 573, 582 (2003); *Minor Metals, Inc. v. United States*, 38 Fed. Cl. 379, 381-82 (1997). Defendant argues that the Supreme Court has cautioned against adopting a rule in which injunctions are presumed because of the absence of other adequate remedies at law. *See Ebay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) (holding in the patent context that a general rule that, after a finding of infringement, an injunction would issue was improper and that nothing the Patent Act presumed to replace the traditional equitable test for injunctive relief).

Plaintiff responds with a string of other cases from this court in which we have found the lost opportunity to compete and lost profits to be more than mere economic harm. *See, e.g.*, *Mori Assocs., Inc. v. United States*, 102 Fed.

---

[9] As mentioned earlier, this is the requirement that 40 percent of the dredging work be performed by a small business. 13 C.F.R. § 121.201 n.2.

Cl. 503, 552 (2011); *OAQ Corp. v. United States*, 49 Fed. Cl. 478, 480 (2001); *Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560, 571 (2000). We conclude that, in the context of a bid protest, the loss of an opportunity to compete for an award for which a party would not otherwise be disqualified is sufficient injury to warrant injunctive relief.[10] Defendant has offered no reason to question plaintiff's eligibility to bid, and plaintiff obviously has an interest in limiting the competition to a smaller number of bidders, if that is what the law requires.

### B. The Balance of the Harms Weighs in Plaintiff's Favor

Plaintiff argues that the loss of the opportunity to compete absent an injunction will outweigh any harm to the agency or the public, especially considering the public's interest in fair and open competition in government procurements.

Defendant answers that an injunction would undermine the SBA's "carefully crafted regulatory and adjudication scheme," upsetting uniformity and consistency in the application of NAICS codes. Def.'s Resp. And Cross-Mot. For J. on the AR 29. The government also attaches an affidavit of the CO, in which she states that past delay may cause the agency to have to resurvey the site because of the possibility of erosion of the lakeshore. The general public may be harmed by any delay because flooding in the interim could cause major damage absent the embankments to be constructed by the project. The agency is also concerned that delay may jeopardize funding for the project.

We are not persuaded that these are serious concerns. We note at the outset that the protest was filed on July 24, 2014. We immediately convened a telephone conference in which the parties presented a schedule for bringing the matter to conclusion in an expeditious manner. At no point did the defendant raise the question of possible prejudice to the agency from delay inherent in even an expedited briefing consideration. It is too late to do so now. We adopted the parties' proposed schedule and, after reviewing the parties' arguments, now agree with plaintiff that there was prejudicial error in

---

[10] We note also that bid preparation costs are not available to plaintiff as it filed a pre-award protest in lieu of bidding on the contract. This does not run afoul of the Supreme Court's warning in *Ebay* because we do not presume that this fact entitles plaintiff to injunctive relief, rather it supports such a finding.

the procurement. The absence of injunctive relief would thus punish plaintiff for standing on its rights. Plaintiff was faced with a choice after the agency resolicited the procurement. It could have submitted a bid and waived its right to compete against similarly-sized small business dredging concerns, or it could, as it did, file a pre-award protest and forego bidding. Absent an injunction, plaintiff will not be able to compete, which will effectively punish it for taking the risk of challenging the agency's error. Moreover, we notified the agency of our decision during oral argument, presumably giving it time to take corrective action before the end of the fiscal year. The balance of the harms thus weighs in plaintiff's favor.

### C. The Public Interest Favors Injunctive Relief

The public interest always favors the correct application of law. More particularly, in the context of procurement statutes, the public interest always favors open and fair competition, and to that end, agency compliance with applicable regulations. *Lab. Corp. of Am. Holdings v. United States*, 116 Fed. Cl. 643,654 (2014). That overarching interest obviously militates in favor of an injunction here. There is no concern about national security, and the poorly supported concerns discussed above about delay, most of which are speculative, do not outweigh the public interest in enforcing the procurement regulations implicated here.

### CONCLUSION

In sum, plaintiff has satisfied the requirements for the limited injunctive relief we ordered on September 23, 2014. The agency is prohibited from awarding the contract or taking any further actions regarding the current solicitation until it has reconsidered whether the dredging exception to NAICS code 237990 ought to apply. It may only continue with current solicitation if it finds that the dredging exception does not apply. In making its new determination, the agency must give primary consideration to the relative value of the work items. If item 7 is the most valuable, it must be considered of primary importance, and absent other compelling considerations, the dredging exception will apply. If that is the case, the agency must resolicit or otherwise amend the contract to allow plaintiff an opportunity to compete. Accordingly, the clerk is ordered to enter judgment for plaintiff. No costs.

s/Eric G. Bruggink  
ERIC G. BRUGGINK  
Judge